**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRENDA FLEMING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **No. 10-cv-3043** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan E. Cox** |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of the Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Brenda Fleming ("Fleming"), seeks judicial review of a final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Fleming has filed a Motion for Summary Judgment and seeks a judgment reversing or remanding the Commissioner's final decision. For the following reasons set forth below, Fleming's motion is granted.

## I.   PROCEDURAL HISTORY

On September 8, 2006, Fleming filed an application for DIB with a period of disability beginning on January 1, 2003.[1] The Social Security Administration denied her initial claim on November 15, 2006.[2] Fleming then filed a Request for Reconsideration and the claim was again denied by notice on January 9, 2007.[3] On February 23, 2007, Fleming filed a written request for a

---

[1] R. at 114-116.
[2] R. at 49.
[3] R. at 54.

hearing before an Administrative Law Judge ("ALJ").[4]

On May 28, 2009, a hearing was held before ALJ Bonny S. Barezky in Chicago, Illinois.[5] Following the hearing, the ALJ issued an unfavorable opinion on June 16, 2009, finding that Fleming was not disabled under the Social Security Act.[6] Fleming then filed a request for review of the ALJ's determination with the Social Security Administration's Appeal Council, which was denied on April 2, 2010, leaving the ALJ's ruling as the final decision of the Commissioner.[7] On May 18, 2010, Fleming filed this timely action.[8]

## II.    STATEMENT OF FACTS

### A.    Introduction and Medical Evidence

The facts set forth below provide a brief summarization of Fleming's background and the medical history that led to her application for DIB. Fleming was born on March 6, 1959, making her fifty years old when the ALJ issued her decision.[9] Fleming graduated from high school and previously worked as a teacher's assistant at a daycare facility from 1995 through 2002.[10] She last worked as a teacher's assistant for two weeks in March of 2006.[11]

Fleming was diagnosed with a seizure disorder as early as 1995 by family medical doctor, Rolando Sajor, M.D.[12] A seizure is "a sudden attack of an illness; a sudden onset of symptoms, [such] as convulsions" or as an "epileptic attack."[13] There are many types of seizures and Fleming

---

[4] R. at 58.
[5] R. at 5.
[6] R. at 38-48.
[7] R. at 1-4.
[8] Pl.'s Compl.
[9] R. at 8.
[10] R. at 8, 29
[11] R. at 10-11.
[12] R. at 177-188.
[13] J.E. Schmidt, 5-PR Attorneys' Dictionary of Medicine at S-90 (Matthew Bender & Co. 2010).

has experienced both grand mal and petit mal seizures throughout her life.[14] A grand mal is " a severe fit or seizure, marked by a prolonged loss of consciousness, convulsions, coma, etc."[15] A petit mal is "a mild seizure or fit, marked by a short lapse of consciousness, dizziness, etc., but without convulsions."[16] Dr. Sajor prescribed her Phenobarbital to treat her disorder and Fleming continues this regimen to date.[17] Fleming has also been diagnosed with iron deficiency anemia, which she has been prescribed Ferrous Sulfate for treatment.[18] Iron deficiency anemia is "anemia caused by a lack of iron in the diet."[19] Generally, anemia is "a condition of the blood in which the number of red blood cells is below normal, or the amount of hemoglobin - the oxygen-carrying red pigment - in the red cells is below normal, or both the number of cells and the amount of hemoglobin are below normal."[20] The symptoms of anemia may include "paleness, weakness, fatigue, lack of energy, shortness of breath, palpitation, and swelling of the extremities."[21] At the time of Fleming's hearing, she also indicated she takes Atenolol, along with water pills, to treat her high blood pressure.[22]

On November 1, 2006, Kenneth H. Gong, M.D., conducted a consultative examination of Fleming on behalf of the Bureau of Disability Determination Services.[23] Fleming told Dr. Gong that she has had a seizure disorder since the age of three and that her last seizure was in 2002.[24] She explained that she did not know the duration of her seizures, but that individuals who witnessed these episodes have explained that she has bitten her tongue and lost bladder control during her

---

[14] R. at 45-46.
[15] J.E. Schmidt, 3-G Attorneys' Dictionary of Medicine at G-138 (Matthew Bender & Co. 2010).
[16] J.E. Schmidt, 4-M Attorneys' Dictionary of Medicine at P-200.1 (Matthew Bender & Co. 2010).
[17] R. at 26, 203.
[18] R. at 28, 203.
[19] J.E. Schmidt, 1-A Attorneys' Dictionary of Medicine at A-341 (Matthew Bender & Co. 2010).
[20] *Id.* at A-339.
[21] *Id.* at A-340.
[22] R at 9, 17.
[23] R. at 202-208.
[24] R. at 202.

episodes.[25] Fleming reported to Dr. Gong that she has been diagnosed with anemia and was seen at Stroger Hospital Emergency resulting from palpitations and weakness related to anemia.[26]

Dr. Gong reported that during his evaluation Fleming did not appear to be in any "acute distress."[27] However, he noted that upon getting up from the examination chair, Fleming's respiratory rate was "28 with shallow breaths."[28] The doctor evaluated Fleming to have normal grip strength, gait, and range of motion.[29] He did note, however, that while Fleming was only able to squat and rise fifty percent, she was unable to offer a reason for this difficulty.[30]

On November 13, 2006, Frank Jimenez, M.D., a separate state-agency physician, reviewed Fleming's medical file and evaluated her residual functional capacity.[31] Dr. Jimenez opined that Fleming would be able to occasionally lift up to twenty pounds, frequently lift ten pounds, stand and/or walk and sit for a total of six hours in an eight-hour workday, and had an unlimited ability to push and/or pull.[32] He noted that Fleming was only limited in the climbing of ladders, ropes, and scaffolds.[33] Dr. Jimenez evaluated Fleming as having tachycardia with a pulse of 108 and an early systolic murmur.[34] Despite these observations, Dr. Jimenez concluded that Fleming was capable of work.[35] A second state-agency physician, Young-Ja Kim, M.D., reviewed Fleming's file on January 5, 2007 and concurred with Dr. Jimenez's findings.[36]

---

[25] *Id.*
[26] R. at 203.
[27] *Id.*
[28] *Id.*
[29] R. at 204.
[30] *Id.*
[31] R. at 209-216.
[32] R. at 210.
[33] R. at 211.
[34] R. at 216.
[35] *Id.*
[36] R. at 218.

**B.** **Fleming's May 28, 2009 Hearing Testimony**

Fleming's hearing before the ALJ took place on May 28, 2009.[37] Fleming appeared in person and was represented by attorney, Christopher Muldane.[38] At the hearing, Fleming testified that she was last employed in 2006 for a period of two weeks.[39] Fleming has no source of income and receives financial assistance from her three adult children.[40] She lives with her boyfriend who she testified makes no contributions to their household.[41] Fleming testified she has never had a driver's license due to seizures.[42]

When asked by the ALJ why she stopped working in 2006, Fleming responded that she became chronically ill and subsequently quit because she could not sustain her job as a child care assistant.[43] Fleming said that she has been taking Phenobarbital for her seizure disorder since the age of three.[44] She explained that between 1995 and 2002, while she worked as a teacher's assistant, she took Phenobarbital and had seizures during that period.[45] Fleming approximated that while she worked, she had two to three seizures per year.[46]

Fleming testified that since she stopped working as a teacher's assistant, she has had petit mal seizures once a month.[47] Fleming explained that she becomes tired before experiencing a seizure and that she lies down as a precaution.[48] She explained that when she has a seizure, she feels

---

[37] R. at 5.
[38] R. at 7.
[39] R. at 10.
[40] R at 19.
[41] R. at 19-20.
[42] R. at 33.
[43] R. at 11.
[44] R. at 26.
[45] R. at 30.
[46] R. at 32.
[47] R. at 15, 30.
[48] R. at 12.

incoherent, dazed or confused.[49] Fleming testified that these feelings last for approximately three to four minutes, at which point she comes back to herself.[50] She said that she has lost bowel control during the course of a seizure, the most recent of which occurred a month before the hearing.[51]

Fleming testified that she has difficulty sleeping as a result of the water pills prescribed for her high blood pressure.[52] Specifically, she said that she is "up all night from the water pills" and that consequently, she sleeps during the day.[53]

Fleming also testified that she could not walk a block without becoming tired.[54] She could stand for approximately twenty minutes in one place before getting tired.[55] When asked by the ALJ about how much weight she could lift, Fleming testified that a gallon of milk would be too heavy for her to lift.[56]

In response to questions about her daily activities, Fleming said that she was able to cook simple meals, dust once or twice a week, do her laundry once a month, wash dishes once or twice a day, and grocery shop.[57] She testified that when she grocery shops, she puts the gallon of milk in the shopping cart herself.[58]

## III.    THE ALJ'S DECISION

In her June 16, 2009 decision, ALJ Barezky determined that Fleming was not disabled within the meaning of the Social Security Act and, therefore, was not entitled to DIB or a period of

---

[49] R. at 14-15.
[50] R. at 13.
[51] R. at 15-16.
[52] R. at 17.
[53] *Id.*
[54] R. at 18.
[55] *Id.*
[56] *Id.*
[57] R. at 20, 22-25.
[58] R. at 22.

disability.[59] In reaching this conclusion, the ALJ followed the five-step evaluation process outlined in the Regulations.[60] As an initial matter, the ALJ determined that Fleming met the insured status requirements of the Social Security Act on December 31, 2007.[61] Under the five-step sequential evaluation process, the ALJ must consider: (1) whether the claimant is presently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the Regulations as being so severe as to preclude gainful activity; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy.[62] A finding of disability requires an affirmative answer at either step three or step five, while a negative answer at any step other than step three precludes a finding of disability.[63]

At step one, the ALJ found that Fleming had not engaged in substantial gainful activity since January 1, 2003.[64] At step two, the ALJ found that Fleming suffered from a seizure disorder, chronic anemia affecting the heart, hypertension and obesity.[65]

At step three, the ALJ found that Fleming lacked an impairment or combination of impairments meeting or medically equaling those listed in 20 C.F.R. § 404, Subpart P, Appendix 1.[66] In support of this finding, the ALJ stated that despite the presence of severe impairments in the record, Fleming failed to meet or equal the requirements in the Listings of Impairments.[67] Further,

---

[59] R. at 41.
[60] R. at 41; 20 C.F.R. § 404.1520(a).
[61] R. at 43.
[62] 20 C.F.R. § 404.1520(b)-(g).
[63] *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).
[64] R. at 43.
[65] *Id.*
[66] R. at 43-44.
[67] *Id.*

the ALJ noted that this finding was acknowledged by Fleming's attorney at the hearing.[68] Specifically, the ALJ noted that she addressed four of Fleming's impairments in reaching her conclusion: (1) seizure disorder; (2) anemia; (3) hypertension; and (4) obesity.[69]

The ALJ explained that with regard to her seizure disorder, Fleming's impairment failed to meet the grand mal seizure frequency requirement set forth in listing 11.02. The ALJ noted that the medical record revealed that Fleming had not had a grand mal seizure since 2002.[70] Further, Fleming's petit mal seizures did not meet the 11.03 listing requirement.[71] Specifically, listing 11.03 requires documentation of claimant's typical seizure patterns and that the seizures occur more frequently than once weekly in spite of at least three months of prescribed treatment.[72] The record, however, indicated Fleming does not have petit mal seizures more than once weekly.[73] To further support this conclusion, the ALJ noted that Fleming testified that the seizures occur approximately once per month.[74]

The ALJ explained that with regard to Fleming's anemia, it did not meet listing 7.01, which requires that a claimant receive one or more blood transfusions on average at least once every two months.[75] Further, Fleming's anemia did not result in any condition that satisfied a cardiovascular listing under listing 4.01.[76] The ALJ explained that with regard to Fleming's hypertension, it did not meet any cardiac listing.[77] In support of this conclusion, the ALJ noted that Fleming's testimony and

---

[68] R. at 10, 44.
[69] R. at 44.
[70] *Id.*
[71] *Id.*
[72] 20 C.F.R. § 404, Subpart P, app. 1; R. at 44.
[73] R. at 44.
[74] R. at 14-15, 30, 44.
[75] R. at 44.
[76] *Id.*
[77] *Id.*

medical records referenced no effects of hypertension to a specific body system other than Fleming's allegation that it affected her ability to sleep.[78] The ALJ indicated that with regard to Fleming's obesity, there was no objective medical evidence demonstrating that her obesity, along with her cardiovascular impairment, would meet any listing under 4.01.[79]

Next, the ALJ assessed Fleming's residual functional capacity ("RFC").[80] The ALJ concluded that Fleming could perform light work as defined by 20 C.F.R. 404.1567(b), except that she could not climb ladders, ropes, or scaffolds, and could not operate dangerous machinery.[81] In reaching this conclusion, the ALJ noted that she considered all of Fleming's symptoms and the extent to which they comported with the objective medical evidence and other medical evidence pursuant to 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p.[82] In addition, the ALJ considered opinion evidence in reaching her conclusion pursuant to 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.[83]

The ALJ found that Fleming's medically determinable impairments reasonably supported Fleming's alleged symptoms, but that Fleming's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment.[84] In support, the ALJ noted Fleming testified to suffering from a seizure disorder since the age of three.[85] The record and Fleming's testimony reflect that she worked as a teacher's assistant from 1995 through 2002, despite her seizure disorder. Further, the ALJ explained that the frequency or intensity of Fleming's seizure disorder had not increased since that time and that, in fact,

---

[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] R. at 45.
[85] *Id.*

her seizure disorder had not progressed beyond petit mal seizures since 2002.[86]

The ALJ also stated that Fleming testified that she received five refills at a time of Phenobarbital from her doctor, did not visit her doctor frequently, and was able to manage her seizure condition on her own with medication.[87] The ALJ noted the inconsistency between Fleming's alleged inability to work due to her seizures and the record evidence that demonstrated that she was in fact capable of work despite her seizure disorder.[88] The ALJ cited a lack of hypertension allegations in Fleming's initial disability report, or in either of her two disability appeal reports, despite her current allegations of fatigue and sleep interruption caused by the combination of water pills with Atenolol.[89] The ALJ noted that Fleming alleged fatigue and that she has been unable to walk further than a half-block or more than two or three stairs, in addition to heart palpitations caused by her anemia.[90] However, the ALJ stated that Fleming testified at the hearing, and reported when receiving medical treatment in May 2006, that iron pills helped her condition.[91] Further, the ALJ explained that the record reflected that Fleming experienced heart palpitations, but no syncope, and that the record demonstrated a decrease in heart palpitations and shortness of breath at that time.[92] The ALJ found that although Fleming testified that she suffered from anemia her entire life, she demonstrated the ability to work despite her anemia.[93]

The ALJ also noted Fleming's ability to live independently, without assistance, other than the financial support received from her children.[94] In support, the ALJ cited Fleming's testimony that she

---

[86] R. at 46.
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.*

lives alone with her boyfriend and that without any help from him, does all the cleaning, shopping

laundry, and takes out the garbage.[95] Fleming also testified that her limitations in daily activities

included not being able to lift a gallon of milk or walk for more than one-half block, and not being

able to stand for more than twenty minutes.[96] The ALJ noted that despite testifying to difficulty in

lifting a gallon of milk, Fleming also stated that she lifts a gallon of milk when grocery shopping, and

puts the milk in the shopping cart herself.[97] The ALJ cautioned that while Fleming's daily activities

do not evince an absolute ability to work, evidence of her activities demonstrated the wide range of

activities Fleming regularly performs despite her impairments.[98] Further, the ALJ gave great weight

to the State agency consultants' opinions in reaching her conclusion, noting that these opinions were

consistent with the RFC assessment and were supported by the record in its entirety.[99]

Based on her RFC and the entire record, the ALJ found Fleming capable of performing her

past relevant work as a teacher's assistant in a preschool.[100] Further, the ALJ noted that this type of

work did not require the performance of work-related activities precluded by Fleming's RFC.[101]

Accordingly, the ALJ ruled that Fleming was not disabled under the Social Security Act.[102]

## IV.    STANDARD OF REVIEW

The Court performs a de novo review of the ALJ's conclusions of law, but the ALJ's factual

determinations are entitled to deference.[103] The District Court will uphold the ALJ's decision if

substantial evidence supports the findings of the decision and if the findings are free from legal

---

[95] *Id.*
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] R. at 47.
[101] *Id.*; 20 C.F.R. 404.1565.
[102] R. at 47.
[103] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

error.[104] Where reasonable minds differ, it is for the ALJ, not this Court, to make the ultimate findings as to disability.[105] However, the ALJ must make an accurate and logical connection from the evidence to the ultimate conclusion.[106] While the ALJ is not required to discuss every piece of evidence, the ALJ must minimally articulate his reasons for crediting or discrediting evidence of disability.[107]

## V.    ANALYSIS

Fleming argues that the Court should reverse or remand the ALJ's decision because the ALJ: (1) failed to make a valid credibility determination; (2) failed to explain how she arrived at the RFC; (3) failed to analyze the combination of Fleming's impairments and their effect on her ability to work, including alleged extreme obesity, heart palpitations, anemia and uterine fibroids; and (4) failed to analyze the specific requirements of Fleming's past relevant work, contrary to Social Security Ruling ("SSR") 82-62.

### A.    The ALJ's Credibility Determination

Fleming's first argument is that the ALJ improperly made a conclusory finding as to her credibility and, therefore, committed legal error.[108] Specifically, Fleming alleges that the ALJ failed to consider Fleming's seizure disorder, fatigue, and side effects when assessing Fleming's credibility.[109] The Commissioner highlights that the ALJ reasonably concluded that Fleming's subjective testimony of her symptoms was not fully credible.[110]

Generally, an ALJ's credibility determinations are entitled to special deference.[111] Therefore,

---

[104] 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).
[105] *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993).
[106] *Dixon v. Massanori*, 270 F.3d 1171, 1176 (7th Cir. 2001).
[107] *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).
[108] Pl.'s Br. 1.
[109] Pl.'s Br. 4-7.
[110] Resp. 7.
[111] *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

the Court will not overturn an ALJ's credibility determination unless it is patently wrong.[112] Pursuant to SSR 96-7p, an ALJ's credibility determination must contain specific reasons that are supported by the evidence in the record.[113] It also requires that the determination be sufficiently specific to make clear what weight the adjudicator gave to the individual's statements and the reasons for that weight.[114] The ALJ must consider the entire record, including the objective medical evidence, the claimant's statements about symptoms, statements and other information provided by any treating physicians, and any other relevant evidence available in the record.[115] The ALJ is not permitted to disregard the claimant's statements solely because they are not established by the medical evidence.[116] In fact, the regulations explain that in addition to considering objective medical evidence, the ALJ should consider a claimant's daily activities, the frequency of symptoms, the dosage and side effects of any medication and other methods of treatment being pursued.[117] While it is not required that the ALJ mention every piece of evidence in reaching her decision, the ALJ must build a logical bridge between the evidence and conclusion.[118]

Fleming makes the specific point that the ALJ committed legal error by failing to first evaluate Fleming's credibility before assessing her RFC. But despite this statement, it seems Fleming's general argument is that she takes issue with the "conclusory fashion" in which the ALJ determined Fleming not to be credible rather than in what order the ALJ assessed her credibility.[119] Fleming cites to several cases for the proposition that the ALJ cannot make a cursory

---

[112] *Id.* at 929 (*citing Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)).
[113] SSR 96-7p.
[114] *Id.*
[115] *Id.*
[116] *Id.*
[117] 20 C.F.R. § 404.1529(c)(3).
[118] *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).
[119] Pl.'s Br. 5.

13

determination.[120] Careful review of the ALJ's decision, however, indicates that the ALJ did not make such a finding. Instead, the ALJ specifically addressed, point by point, Fleming's impairments in reaching her credibility determination.[121] For example, the ALJ detailed Fleming's seizure disorder, hypertension (and fatigue), and anemia in her decision and further articulated how Fleming's alleged limitations conflicted with Fleming's own testimony.[122]

With respect to Fleming's claim that the ALJ failed to analyze Fleming's seizure disorder, the ALJ first noted that Fleming maintained consistent work as a teacher's assistant from 1995 through 2002 in spite of her seizure disorder.[123] The ALJ also included that Fleming stated to the consultative examiner that her last seizure (presumably referring to her last grand mal seizure) occurred in 2002.[124] Further, the ALJ noted that Fleming testified to the fact that "her seizure disorder ha[d] not progressed beyond petit mal seizures since 2002."[125] The ALJ then found because Fleming "is able to manage her seizure condition on her own with medication," "she does not visit her doctor frequently" and receives five refills of phenobarbital at a time from her doctor to treat her seizure condition.[126] Despite Fleming's claim that she cannot work because of her seizure disorder, the ALJ specifically noted that the record clearly demonstrates, as does Fleming's own testimony, that Fleming's seizure disorder has improved since she last worked in 2002, and, in fact, that she was

---

[120] *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (reversing and remanding the ALJ's decision for failure to explain the weight given to claimant's statements and for failure to provide any support from the record in reaching the decision); *Woodson v. Astrue*, No. 09cv8028, 2010 WL 3420219 (N.D. Ill. Aug. 27, 2010) (reversing the ALJ's decision for failing to analyze claimant's testimony regarding his symptoms and daily activities); *Dogan v. Astrue*, No. 09cv207, 2010 WL 2331394 (N.D. Ind. June 3, 2010) (finding that the ALJ failed to explain why the claimant was not credible prior to a certain date).
[121] *See* R. at 45-46.
[122] R. at 45-46.
[123] R. at 45.
[124] R. at 45.
[125] R. at 46.
[126] *Id.*

capable of working when she suffered more severe seizures in the past.[127]

Next, Fleming argues that the ALJ did not consider the impact of Fleming's hypertension on her inability to work and failed to properly analyze Fleming's complaints of fatigue.[128] Specifically, Fleming asserts that the ALJ "failed to build a logical bridge between finding [...] Fleming's hypertension to be severe, and then stating that it did not impact her ability to work."[129] But the ALJ did, in fact, make note of Fleming's hypertension in the report, specifically discussing Fleming's accompanying medical treatment for her hypertension.[130] At that point, the ALJ noted that Fleming "alleges that the water pills cause fatigue because she takes it at night and has to go to the bathroom often which interrupts her sleep."[131] With respect to fatigue, the ALJ noted that Fleming alleged that she is "fatigued and unable to walk ½ a block or walk up more than 2 or 3 stairs."[132]

Then, the ALJ noted several contradictions in Fleming's testimony with respect to her allegations of fatigue.[133] As noted by the ALJ, despite testifying that Fleming found it difficult to lift a gallon of milk, "she also stated that she is able to do so when she shops, in that she is able to buy gallons of milk and put them into the shopping cart by herself."[134] Further, despite Fleming's testimony that she becomes "fatigued and unable to walk ½ a block or walk up more than 2 or 3 stairs," the ALJ noted that Fleming was able to live independently and without assistance, aside from financial assistance from her children.[135] The ALJ made clear that while Fleming's daily activities could not alone support a finding of lack of credibility, they should be considered to determine

---

[127] R. at 45-46.
[128] Pl.'s Br. 6-7.
[129] Pl.'s Br. 6.
[130] R. at 46.
[131] *Id.*
[132] *Id.*
[133] *Id.*
[134] *Id.*
[135] *Id.*

whether Fleming was credible.[136]

Fleming also makes a side argument regarding the ALJ's failure to consider Fleming's medications and their potential side effects.[137] Fleming correctly points out that SSR 96-7p requires that ALJs consider the side effects of a claimant's medications. To support her proposition, Fleming points the Court to her medical record, where she reported that Phenobarbital, the medication she took for her seizures, made her drowsy.[138] As noted by the ALJ, Fleming testified that "she is able to manage her seizure condition on her own with medication."[139] While Fleming also cites to possible side effects from other impairments, such as her anemia, the ALJ specifically noted that Fleming testified that "iron pills help her condition."[140] The ALJ also discussed Fleming's various medications and relied on the inconsistencies with Fleming's own testimony to support her finding that Fleming was not credible.[141]

Accordingly, because the ALJ considered not only the medical record, but also evaluated Fleming's testimony as to her daily activities, frequency of her symptoms, and the dosage and side effects of her medication, the Court finds substantial support for the ALJ's credibility determination.

## B. The ALJ's RFC Assessment

Fleming argues that by not providing any explanation as to how she arrived at her RFC assessment, the ALJ committed legal error.[142] Specifically, Fleming asserts that the ALJ failed to articulate what evidence she used to determine that Fleming could perform light work, with the

---

[136] 20 C.F.R. § 404.1529(c)(3).
[137] Pl.'s Br. 7.
[138] *Id.*
[139] R. at 46.
[140] *Id.*
[141] R. at 45-46.
[142] Pl.'s Br. 7.

exception of climbing ladders, ropes or scaffolds, or operating dangerous machinery.[143] Alternatively, the Commissioner argues that the ALJ discussed "the medical evidence, physician opinions, and Fleming's testimony in finding [that Fleming] could perform a light range of work."[144] We note that the ALJ essentially combined much of her discussion of credibility and RFC. By not analyzing each step as a separate entity, it is difficult for the Court to sufficiently parse out the ALJ's discussion of each. However, the ALJ specifically articulated two factors that helped her determine Fleming's RFC.[145] First, the ALJ noted that Fleming's alleged daily activities could not be objectively verified with any degree of reasonable certainty. Second, the ALJ indicated that the daily activities Fleming described she was able to do did not correspond to the degree of limitation she alleged.[146]

With respect to a claimant's RFC assessment, an adjudicator is tasked with determining "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."[147] The first prong of the assessment requires a determination regarding an "individual's functional limitations or restrictions" in addition to an assessment of work-related abilities.[148] The second prong of the assessment calls for a finding of an individual's exertional level of work, either "sedentary, light, medium, heavy, and very heavy."[149] An ALJ must minimally articulate reasons for crediting or discrediting evidence of disability.[150]

First, the ALJ noted that Fleming's "alleged limited daily activities cannot be objectively verified with any reasonable degree of certainty."[151] As we discussed above, with respect to Fleming's

---

[143] Pl.'s Br. 7-8; *see* R. at 44.
[144] Resp. 4.
[145] R. at 46.
[146] *Id.*
[147] SSR 96-8p.
[148] *Id.*
[149] *Id.*
[150] *Clifford*, 227 F.3d at 871.
[151] R. at 46.

seizure disorder, the ALJ noted that despite Fleming's claim that the seizures limit her ability to work, Fleming's seizure disorder has not progressed beyond petit mal seizures since 2002.[152] The ALJ noted that this is particularly important because Fleming worked as a teacher's assistant from 1995 to 2002 in spite of her seizures and, in fact, during that period of time she experienced grand mal seizures.[153] The ALJ remarked that there was no objective medical evidence in the record showing that the frequency of Fleming's seizures increased since 2002.[154] To the contrary, the ALJ noted that Fleming's seizure disorder has not progressed beyond petit mal seizures since 2002.[155] Further, pursuant to Fleming's alleged inability to work due to her anemia, the ALJ pointed out that Fleming stated that she has suffered from anemia her entire life and "has demonstrated the ability to work in spite of anemia in the past."[156]

Second, the ALJ noted that the daily activities that Fleming described she was able to do does not correspond to the degree of limitation she alleges.[157] The ALJ stated that Fleming "testified, in essence, that she is solely responsible for all her household chores."[158] Specifically, the ALJ pointed to the fact that Fleming testified that while she lives alone with her boyfriend, she "does all the cleaning, shopping, laundry, and takes out the garbage" without her boyfriend's help.[159] Further, the ALJ indicated that "the record demonstrates that she is able to live independently [and] without assistance other than [the] financial assistance she receives from her children."[160] The ALJ also pointed to Fleming's testimony regarding her alleged limitations due to fatigue and thus her inability

---

[152] *Id.*
[153] *Id.*
[154] R. at 45-46.
[155] R. at 46.
[156] *Id.*
[157] *Id.*
[158] *Id.*
[159] *Id.*
[160] *Id.*

to do simple tasks, including lifting a gallon of milk, walking half of a block, or walking up more than two or three stairs.[161] Despite Fleming's alleged limitations, the ALJ noted that Fleming also testified that when she grocery shops, she is able to "buy gallons of milk and put them into the shopping cart by herself."[162] The ALJ stipulated that while Fleming's "daily activities...do not in and of itself indicate an ability to work, it does show that the claimant is capable of performing a wide range of activities in spite of her impairments in a degree greater than alleged."[163]

Fleming also makes a side argument that the ALJ failed to consider that Fleming went into tachycardia as documented by the consultative examiner's report.[164] While the ALJ does not specifically address this in her decision, we again note that the ALJ is not required to recite every piece of evidence to arrive at a reasonable conclusion.[165] To support her argument, Fleming points to the consultative examiner's report which identifies that Fleming went into tachycardia when she stood up from the exam table.[166] Aside from this one event, neither the medical record nor Fleming's own testimony reflect that Fleming experienced episodes of tachycardia aside from this one discrete event. We, therefore, cannot agree that the ALJ committed reversible error for failure to discuss this.

**C.    The ALJ's Duty to Analyze Fleming's Obesity**

Fleming also argues that the ALJ failed to analyze the combination of her impairments. We again find, however, that the more precise argument seems to be the ALJ's failure to incorporate any discussion of obesity. The Commissioner asserts that "the ALJ specifically considered [Fleming's] obesity," among her other impairments, and "discussed the record evidence relating to these

---

[161] *Id.*
[162] *Id.*
[163] *Id.*
[164] Pl.'s Br. 8.
[165] *Knox v. Astrue*, No. 08-3389, 2009 WL 1747901, at *5 (7th Cir. June 19, 2009).
[166] Pl.'s Br. 8.

impairments."[167] Careful review of the ALJ's decision indicates that the ALJ did not, in fact, proffer any explanation as to how Fleming's obesity did or did not factor into her overall decision.

SSR 02-1p defines obesity as a medically determinable impairment and requires adjudicators to consider its effects when evaluating a claimant's disability.[168] "The combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."[169] Consequently, obesity must be considered for its incremental effect when combined with other impairments.[170]

Here, the ALJ found that Fleming's obesity was a severe impairment.[171] The ALJ recognized that Fleming testified that she was five feet seven inches tall, weighed approximately 237 pounds, and had a BMI of 37.[172] She then noted in her opinion that "there is no objective medical evidence demonstrating that [Fleming's] obesity in combination with [her] cardiovascular impairment meets any listing under 4.01.[173]

We note that there is a factual discrepancy pertaining to Fleming's height and BMI. Despite Fleming's testimony, the medical records indicate that Fleming was five feet five inches tall.[174] We are further unclear as to how Fleming and the ALJ determined Fleming's BMI. In her brief, Fleming cites to a BMI of 41.4 while the ALJ noted that Fleming's BMI is 37.[175] Neither the ALJ nor Fleming cite to a report or medical record that would support either number. The medical records, rather, reveal

---

[167] Resp. 3.
[168] *See* SSR 02-1p.
[169] *Id.*
[170] *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2008).
[171] R. at 43.
[172] R. at 44.
[173] *Id.*
[174] R. at 203, 216.
[175] Pl.'s Br. 9 n..7.

no BMI determination.

It is important to know Fleming's exact BMI to determine her level of obesity. As Fleming correctly points out, SSR 02-1p categorizes a BMI above 40 to be a Level III, also known as "extreme" obesity.[176] If Fleming's finding of a BMI of 41.5 is accurate, then she would categorically be defined as one with "extreme" obesity.[177] If the ALJ's recitation of a BMI of 37 is accurate, then Fleming would have Level II obesity.[178] While we cannot factually determine the impact that a finding of Level II or Level III obesity would have for Fleming's disability determination, it requires further investigation by the ALJ. SSR 02-1p also mandates that the ALJ specifically address the effect of obesity on a claimant's limitations.[179] Although the ALJ listed obesity as one of Fleming's severe impairments, she ultimately concluded that there was no medical evidence that would lead her to believe that Fleming's obesity in combination with her other impairments met any listing under 4.01.[180] Because the ALJ found that one or more of Fleming's impairments was "severe," the ALJ had a duty to consider "the aggregate effect of this entire constellation of ailments-including those impairments that in isolation are not severe."[181] We, therefore, remand this case for further inquiry so that Fleming's BMI can be properly determined and her obesity level appropriately considered.

**D.      Fleming's Past Relevant Work and Vocational Expert Consultation**

Fleming's final argument is that the ALJ provided no support to show that Fleming can perform her past relevant work as a teacher's assistant.[182] Fleming asserts that she testified that being

---

[176] *See* SSR 02-1p.
[177] *Id.*
[178] *Id.*
[179] *See also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).
[180] R. at 44.
[181] *See Golembiewski*, 322 F.3d at 918 (*citing* 20 C.F.R. § 404.1523; *see also Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)).
[182] Pl.'s Br. 10.

a teacher's assistant "required her to stand or walk for six hours and sit for two hours per day."[183] Fleming further argues that because the ALJ found Fleming's seizure disorder to be a "severe" impairment, "she should have obtained testimony from a vocational expert to determine whether someone having seizures would be able to perform [...] Fleming's past relevant work in a preschool."[184] The Commissioner argues that "the ALJ expressly stated that she gave great weight to the state agency reviewing physicians' assessment" in determining whether Fleming could perform her past work.[185]

"Light work" involves "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds."[186] While lifting weight may be infrequent, a job is deemed "light work" "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."[187] An individual deemed to be capable of light work "must have the ability to do substantially all of [the abovementioned] activities."[188] As to whether an ALJ must consult a VE when determining a claimant's ability to do past work, it is discretionary.[189] The regulations indicate that while the opinions of experts are considered, the final responsibility for deciding the RFC or vocational factors, is reserved to the Commissioner.[190]

The ALJ cited the Dictionary of Occupational Titles in describing Fleming's past relevant

---

[183] *Id.*
[184] *Id.*
[185] Resp. 4.
[186] 20 C.F.R. § 404.1567(b).
[187] *Id.*
[188] *Id.*
[189] 20 C.F.R. § 404.1560(b)(2).
[190] 20 C.F.R. § 404.1527(e)(2).

work as a teacher's assistant in a preschool to be "light, more than unskilled work."[191] The ALJ concluded that Fleming was able to perform this work at the light exertional level with additional restrictions, including that she cannot climb ladders, ropes and scaffolds, or operate dangerous machinery.[192] An ALJ must "make certain findings of fact and include them in the written decision" when the issue of skill transferability is material to the outcome.[193] Specifically, those findings of fact include "the acquired work skills" and the "specific occupations to which the acquired work skills are transferrable."[194] Although Fleming does not allege that the ALJ committed legal error for failure to use a VE, we note this in the event it is determined that Fleming's obesity has a significant impact on her ability to perform work duties. If on remand Fleming's obesity is, in fact, determined to have a significant impact on her work capacity, then the ALJ may want to consult a VE.[195]

With respect to the ALJ's failure to analyze Fleming's specific duties of her past work, we acknowledge that the ALJ did not specify the duties of a teacher's assistant. The ALJ did note, however, that Fleming "is capable of performing a wide range of activities in spite of her impairments in a degree greater than alleged."[196] As noted by Fleming, the Seventh Circuit in *Nolen v. Sullivan* requires an ALJ to "list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks."[197] After careful review of the ALJ's decision, we cannot determine how or if the ALJ analyzed the specifics of Fleming's past work. And, as noted, we are concerned with the ALJ's failure to address Fleming's obesity as a possible

---

[191] R. at 47.
[192] R. at 44, 47.
[193] *Abbott v. Astrue*, 2010 WL 3075267 (7th Cir. 2010) (unpublished); *see also* SSR 82-41.
[194] *See* SSR 82-41(c).
[195] 20 C.F.R. § 404.1560(b)(2).
[196] R. at 46.
[197] 939 F.2d 516, 518 (7th Cir. 1991).

aggravating factor with her other impairments. While we cannot determine how this additional information will impact Fleming's disability determination, we find that further investigation as to how the ALJ determined Fleming's specific requirements as a teacher's assistant is necessary. We, therefore, remand the matter for the ALJ to determine the demands of Fleming's job, and based on the evidence available, her ability to meet them.

**CONCLUSION**

For the reasons set forth above, Fleming's motion for summary judgment is granted [dkt. 18]. We, therefore, remand the case to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**ENTERED: May 10, 2011**

**UNITED STATES MAGISTRATE JUDGE**
**Susan E. Cox**